**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DONALD E. MORAN, #171514**                                    **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO. 1:13cv111-JMR**

**DR. REDDIX and
MARCUS THORN**                                    **DEFENDANTS**

<u>**SUMMARY JUDGMENT**</u>

Before the Court are the Defendants' Motions for Summary Judgment [70, 72] and the Plaintiff's Motion [75] for Summary Judgment. The Court, having been advised in the premises and having considered the entire record, finds as follows:

The Plaintiff, Donald E. Moran [Moran] filed his complaint on April 8, 2013, alleging violations of his constitutional rights. [1, p. 4.] At all times relevant to this suit, Moran was a pretrial detainee. [71, p. 1.] Moran was arrested and booked into the Harrison County Adult Detention Center [HCADC] on April 21, 2010, following his indictment on charges of Touching a Child for Lustful Purposes. [70-1, pp. 4-6.] Moran was housed in B-Block, B-Section, Cell 113. [70-1, p. 7.] Moran contends that he was evaluated by a clinical psychiatrist, Dr. Schaeffer, when he entered the HCADC. [1, p. 4.] Moran contends that he was prescribed certain psychiatric medication, which Dr. Michael Reddix [Dr. Reddix] was responsible for dispensing as the medical contractor for the HCADC. (*Id.*) Moran states that when his medication ran out, the prescription was not renewed, thereby causing his mental state to deteriorate to the point that Moran contemplated suicide. (*Id.*)

Moran was interviewed by the medical contractor for the HCADC, Health Assurance LLC, at which time Moran was assessed as having mental health issues, and his medications were identified as Effexor, Lithium, Seraquel, Lortab and Xanax. [70-1, p. 11.] A note at the time of examination indicated that an attempt to contact Moran's treating physician would be made to confirm his medications. (*Id.*)

Moran was examined again on April 22, 2010, following complaints of chest pain. [70-1, p. 12.] Moran was suffering from acute anxiety. (*Id.*) The next day, Moran reported extreme pain on his right side. [70-1, p. 13.] After the physician was contacted, new prescription medication were ordered. (*Id.*) Moran was placed on suicide watch on April 24, 2010. [70-1, p. 14.] Medication confirmed with Moran's pharmacy confirm the following: Effexor - 150 mg; Lithium - 900 mg; and Seraquel - 200 mg. [70-1, p. 15.] The physician, Dr. Schaeffer, ordered a continuous 15 minute suicide watch until the medications were received on April 26, 2010. [70-1, p. 16.]

Moran was assessed on April 26, 2010, with the determination made that he "remain on watch until 4 meds have been administered." [70-1, p. 17.] On April 27, 2010, Moran remained on suicide watch, and his medication still had not arrived. (*Id.*) On April 28, 2010, Moran still had not received his psychotropic medications. (*Id.*)

Moran received his medication on April 29, 2010, and according to the notes, the social worker met with Moran for a daily assessment, indicating that Moran's demeanor had drastically improved. (*Id.*) Moran was taken off suicide watch and placed in a "step down" cell in D-Block, F-Section. [70-1, pp. 17-18.] After his time in the step down cell, Moran was transferred back to the general population on April 30, 2010. (*Id.*)

On April 30, 2010, Moran told the HCADC medical staff that he had faked the suicide threat so he could receive his medication quickly. [70-1, p. 19.] The physician should be notified of any significant lab results, according to Moran's chart. (*Id.*)

Marcus Thorn [Thorn] was posted in D-Block, E-Section on May 9, 2010. [70-2, p. 1.] Moran was in cell 137 until about 7:00 P.M., when he left his cell for day room time. (*Id.*) At 7:04 P.M., Moran climbed over the top tier rail, yelled "Hey Officer" and then jumped to the floor, feet first. [70-2, p. 2.] Thorn had yelled to Moran not to jump, just before Moran actually

2

jumped. (*Id.*) Thorn called for backup, and two sergeants and two nurses responded to the call. [70-2, pp. 2-3.] American Medical Response was called, and Moran was ultimately transported to Gulfport Memorial Hospital for treatment. [70-2, p. 3.]

Thorn avers that Moran was not on suicide watch at the time of the incident. (*Id.*) Moran states that "At no time was I made aware of any potential risk of harm to Donald Moran's health or safety as an inmate at the HCADC, nor was I aware of any facts from which the inference could be drawn that a substantial risk of serious harm as to Donald Moran." [70-3, p. 3.] Thorn stated that he was not responsible for prescribing or administering medication to the inmates, nor was he aware of any medication taken by Moran or any other inmate. (*Id.*) Thorn did provide security for nurses that were administering medication at times. (*Id.*)

Moran contends that Dr. Reddix and Thorn violated his constitutional rights by failing to protect him from attempting suicide. [1, p. 4.] Moran claims that Dr. Reddix failed to dispense medication prescribed by Dr. Scheaffer and that Thorn opened Moran's cell, thereby providing Moran with the opportunity to make his suicide attempt. [1, pp. 4-5.] Moran contends that he informed Thorn of his intention to jump if he were let out of his cell for recreation time. [1, p. 5.] Thorn had conducted an informal count of all inmates and a security and welfare check of all inmates in their cells prior to the incident at issue in this case. [70-2, p. 2.] Thorn averred that prior to the jumping incident, he was not made aware by Moran or anyone else that Moran was having suicidal thoughts or that Moran presented a threat of harm to himself or anyone else prior to the incident. [70-2, p. 3.] Moran was not on suicide watch on May 9, 2010, the date of the incident at issue in this suit. (*Id.*) In fact, Thorn indicated that he had never met or heard of any facts regarding Moran prior to meeting Moran during his May 9, 2010, shift in D-Block, E-Section of the HCADC. [70-2, p. 1.]

Thorn states that he is entitled to qualified immunity for any claims advanced against him

in his individual capacity. [71, p. 15.] Thorn asserts that because Moran cannot demonstrate that any of his constitutional rights were violated by Thorn, thus entitling Thorn to qualified immunity. (*Id.*) Even if Moran had established a constitutional violation, Thorn's contends that his conduct was objectively reasonable making immunity applicable in this case. (*Id.*)

Thorn also argues that Moran has not stated an official capacity claim against him because Moran cannot show that Thorn was a policy maker. [71, p. 18.] Thorn averred that he was not an official policy maker for the Harrison County Sheriff's Office and did not have policy making authority for that office. [70-2, p. 3.] Thorn maintains that because Moran's official capacity claims are actually claims against the office of the Harrison County Sheriff, Moran must show a governmental policy, custom, or practice which was the moving force behind a constitutional deprivation, or that a policy was adopted with objective deliberate indifference to Moran's constitutional rights to establish liability against Thorn. [71, p. 20.]

David Sanderson [Sanderson], warden of the HCADC, averred that the HCADC has specific policies in place regarding the duties of deputies, suicide watch and mental health care which are designed to protect the health and safety of all inmates at the HCADC. [70-1, pp. 23-38.] Thorn asserts that these policies or his actions were not the moving force behind any alleged deprivation of Moran's rights. [71, p. 20.] According to the Defendants, any official capacity claim advanced by Moran against Thorn should be dismissed. [71, p. 21.]

Any state law claims which may be brought in this case are barred by the provisions of the Mississippi Tort Claims Act [MTCA], according to Thorn. [71, p. 21.] The MTCA provides that a governmental entity shall not be liable for the claim of "any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). Moran's state law claims are also barred

because his lawsuit was not filed within "one year of the tortious, wrongful, or otherwise actionable conduct on which the liability phase of the action is based." MISS. CODE ANN. § 11-46-11(3)(a). The incident at issue in this suit occurred on May 9, 2010, and this lawsuit was filed on April 8, 2013. [1.] To be timely under state law, the suit should have been filed by or before May 9, 2011, according to Thorn. [71, p. 21.]

Dr. Reddix asserts that Moran has not exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e for any claims advanced against him. [73, p. 2.] Dr. Reddix also asserts that Moran cannot establish that Dr. Reddix acted with "deliberate indifference" to Moran's medical needs. (*Id*.) According to Dr. Reddix, the medical records do not support Moran's claim that Dr. Reddix acted with deliberate indifference to Moran's need for medication because there is no evidence that Dr. Reddix did anything to interfere with the administration of Moran's medication. [73, p. 3.] Dr. Schaeffer placed Moran on suicide watch and prescribed his medications on April 26, 2010. [70-1, pp. 16, 18.] Moran remained on suicide watch pending receipt of his medications. [70-1, p. 16.] After Moran received his medication he was reported in better spirits, and was taken off suicide watch by Dr. Schaeffer. [70-1, pp. 17-18.] On April 30, 2010, Moran told the medical staff that he "faked" the suicide threat to insure he received his psychiatric medication faster. [70-1, p. 19.] Dr. Reddix maintains that there is no evidence that he did anything to interfere with the administration of Moran's medication. [73, p. 3.]

Moran filed a motion for summary judgment which merely contains the statement "Motion for Summary Judgment Case #1:13cv111-LG-JMR." [75.] Moran did not file a response to either Dr. Reddix or Thorn's summary judgment motions. (Ct. R.)

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-7 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The facts are reviewed with all reasonable inferences drawn in favor of the non-moving party. *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 391 (5th Cir. 2009).

## Discussion

Moran asserts that Thorn and Dr. Reddix violated his constitutional rights by failing to protect him from his attempted suicide, and failing to dispense his prescribed medication. [1, p. 4.] The Court will address Moran's claims of deliberate indifference and the defendants' claims of qualified immunity below.

I.    Deliberate Indifference

The Eighth Amendment prohibits prison officials from showing deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). An official is deliberately indifferent "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). The "deliberate indifference" standard requires "a

6

showing that the official was subjectively aware of the risk [of serious harm to the inmate]." *Farmer*, 511 U.S. at 842. A prison official "cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 842-3. To prevail on a claim of deliberate indifference, an inmate must submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

Claims for alleged violations of a pretrial detainee's constitutional rights are classified as either an attack on a "condition of confinement" or an "episodic act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). A "condition of confinement" case includes such claims as an inadequate number of beds, problem with mail privileges or the like. *Scott*, 114 F.3d at 53. In those cases, a court will find a constitutional violation only when the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

An "episodic act or omission" occurs when "the complained of harm is a particular act or omission of one or more officials. *Bell*, 441 U.S. at 539. This case involves an "episodic act or omission." In these cases, "an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act or, or omission by, the actor and then point derivatively to a policy, custom or rule of the municipality that permitted or caused the act or omission." *Flores v. City of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). A detainee must first establish that the specific actions by the actor were constitutional violations, which is accomplished by demonstrating subjective deliberate indifference on the part of the

7

county employees involved in the alleged violation. *Scott*, 114 F.3d at 54. The plaintiff must also establish that the violation resulted from a policy or custom adopted or maintained with objective deliberate indifference. *Scott*, 114 F.3d at 54.

"Deliberate indifference is more than mere negligence or even gross negligence." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010), *cert. denied* __U.S. __, 131 S.Ct. 2932 (2011). The official must have subjective knowledge of a substantial risk of serious harm to a pretrial detainee and that official must respond with deliberate indifference to that risk" *United States v. Gonzalez*, 436 F.3d 560, 573 (5th Cir.), *cert. denied* 549 U.S. 823 (2006). In addition, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The "subjective recklessness" standard does not require the plaintiff to "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842; *see also Domino v. Tex. Dep't. of Criminal Justice,* 239 F.3d 752, 755 (5th Cir. 2001), *reh'g denied* March 13, 2001. To meet this standard, a plaintiff must establish more than mere negligence, unreasonable response, or medical malpractice, and something more than mere disagreement with his treatment. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006).

In this case, Moran has not demonstrated a genuine issue of material fact from which a reasonable jury could conclude that either Thorn or Dr. Reddix's actions or inactions violated Moran's Eighth Amendment rights. First, Dr. Reddix is not mentioned in connection with the events leading up to this lawsuit, other than Moran's statement that "[t]he dispensing of my medication was then the responsibility of the medical contractor for Harrison County Jail: Dr.

8

Michael Reddix and Health Assurance." [1, p. 4.] Thorn averred that he "was not made aware by [Moran] or anyone that [Moran] was either suicidal or posed a threat of harm to himself." Thorn also stated that "[a]t no time relevant to the incident did I have any knowledge of Inmate Donald Moran having suicidal thoughts or ideations [sic]" and "[a]t no time was I made aware of any potential risk of harm to Donald Moran's health or safety as an inmate at the HCADC, nor was I aware of any facts from which the inference could be drawn that a substantial risk of serious harm existed as to Donald Moran." [70-2, p. 3.] A complete lack of knowledge of any symptoms or propensity toward suicidal thoughts does not rise to the level of an "obvious" or apparent risk to Moran's health sufficient to infer that Thorn acted with deliberate indifference. *See Gonzales,* 436 F.3d at 573-4. At best, even if Moran told Thorn prior to being released from his cell that he had suicidal thoughts so that Thorn could be seen to have acted negligently, negligence alone is insufficient to establish a cognizable claim under the Eighth Amendment. *See Gobert*, 463 F.3d at 346.

Furthermore, the Fifth Circuit has held that a plaintiff alleging such a claim must "establish more than the typical quantum of evidence necessary to overcome a qualified immunity defense." *Wagner v. Bay City, Tex.,* 227 F.3d 316, 324 (5th Cir. 2000). Specifically, a plaintiff "must show not only that the defendants' actions in failing to provide [him] medical attention . . . were objectively unreasonable, but also that defendants intended the consequence of those actions." *Wagner,* 227 F.3d at 324. "Mere negligence will not suffice, and deliberate indifference, i.e ., the subjective intent to cause harm, cannot be inferred from a failure to act reasonably." *Wagner,* 227 F.3d at 324. In this case, the healthcare staff responded to Moran's medical needs. The Court concludes that Moran failed to established deliberate indifference, and finds that his claim for a deprivation of his constitutional rights based on deliberate indifference should be dismissed against these defendants.

II.    <u>Qualified Immunity</u>

Moran seeks to impose liability against the Defendants in their individual capacities for the allegedly unconstitutional conditions at the HCADC. The Court must first determine whether the plaintiff has established a violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). The burden of rebutting the defense of qualified immunity lies with the plaintiff. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). To determine if an official is entitled to qualified immunity in a § 1983 action, the Court must apply the objective reasonableness test. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The defendant has the burden of establishing the qualified immunity defense and the plaintiff must establish that the defendant violated a clearly established federal right. *Bazan v. Hildago County*, 246 F.3d 481, 490 (5th Cir. 2001).

"The qualified immunity inquiry consists of two prongs:  (1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009). As discussed above, Moran failed to establish a violation of his constitutional rights by either of these defendants in the allegations of his complaint.

In addition, Plaintiff's conclusory and generic allegations which lump all defendants into one group are insufficient to defeat the qualified immunity defenses raised by these defendants. Plaintiff "must establish that the [prison] officials were actually aware of the risk, yet consciously disregarded it" to support his claim of deliberate indifference. *Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002). Each defendant's subjective deliberate indifference must be examined separately and knowledge of a risk by other prison officials is not automatically imputed to another individual defendant. *Lawson*, 286 F.3d at 262. In addition, the

doctrine of *respondeat superior* does not apply to Section 1983 claims, so supervisory officials may not be held liable based on the conduct of their subordinates. *Stewart v. Murphy,* 174 F.3d 530, 536 (5th Cir. 1999), *cert. denied* 528 U.S. 906. The Court finds that the Defendants should be granted qualified immunity for claims advanced against them in their individual capacities.

III.    State Law Claims

The Defendants, in their official capacity, argue that MISS. CODE ANN. § 11-46-9 (1972) bars any recovery Moran may seek under Mississippi law. The MTCA exempts governmental entities and their employees "acting within the course and scope of their employment or duties" from liability for certain kinds of claims. MISS. CODE ANN. § 11–46–9(1). Under the MTCA, a governmental entity is not liable to any claimant who, at the time the claim arises, is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution regardless of whether the claimant is or is not an inmate when the actual claim is filed. MISS. CODE ANN. § 11–46–9(1)(m). The Court agrees with the Defendants and finds that any claims Moran raises under Mississippi State law against the Defendants are barred by provisions of the MTCA.

IV.    Moran's Summary Judgment Motion

Moran has presented no evidence or legal basis for his motion for summary judgment. [75.] Summary judgment is proper only if the record discloses that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In the absence of any such evidence, the Court concludes that Moran's motion for summary judgment should be denied.

**Conclusion**

For the reasons set forth above, this Court finds that the Defendants' motions for summary judgment [70, 72] on the claims advanced by Moran under § 1983 against these

Defendants should be granted. The Court further finds that the motion for qualified immunity by the Defendants for any claims brought against them in their individual capacities should be granted. Any claims advanced under state law should also be dismissed on summary judgment. In addition, the Court finds that Moran's motion for summary judgment [75] should be denied. A separate judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date. A copy of this Memorandum Opinion and the judgment shall be mailed by certified mail, return receipt requested to Moran at his last known address of record. Each party shall bear their respective costs associated with these motions.

DATED, this the 9th day of June, 2014.

s/ John M. Roper, Sr.

CHIEF UNITED STATES MAGISTRATE JUDGE